UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/10/2024
```

SMART SHOPPERS NY LLC,

                              Plaintiff,

         v.

TYLERS COFFEE LLC D/B/A TYLERS ACID-
FREE COFFEE A/K/A TYLERS COFFEES®,
LIFTTED COFFEE LLC, RESINEATER420 LLC,
TYLER ORNSTEIN, and DOUG HARDING,

                              Defendant.

22 Civ. 4969 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Smart Shoppers NY LLC ("Plaintiff") commenced this action against Defendants Tyler Ornstein and Doug Harding (collectively the "Individual Defendants") and the companies owned and controlled by them, Tylers Coffee LLC D/B/A Tylers Acid-Free Coffee A/K/A Tylers Coffees®, LifttedCoffee LLC, and Resineater420 LLC (collectively the "Company Defendants," and together with the Individual Defendants, the "Defendants"), asserting common law claims for breach of contract, unjust enrichment, and fraud. (First Amended Complaint ("FAC") ¶ 70-89, ECF No. 15.) Before this Court is Defendants' motion to dismiss Plaintiff's FAC in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6). (Defs.' Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mot."), pp. 9-12, ECF No. 54.) For the following reasons, Defendants' motion is DENIED in part and GRANTED in part, and Plaintiff's complaint is dismissed in its entirety without prejudice.

# BACKGROUND

## I.   Factual Background

The following facts are derived from Plaintiff's FAC and are assumed as true for purposes of this motion. [1] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.   The Parties

Plaintiff is a New York limited liability company, where all of its members all reside. (FAC ¶¶ 10-12.) Levi Schecter ("Schecter") is the CEO of Smart Shoppers NYC LLC. (FAC ¶ 12.) Company Defendants are three Arizona limited liability companies that operate from Tucson, Arizona. (*Id.* ¶¶ 13-22.) Tylers Coffee LLC D/B/A Tylers Acid-Free Coffee A/K/A Tylers Coffee® ("Tylers Coffee") is comprised of two members, including its majority owner, Individual Defendant Tyler Ornstein ("Ornstein"). (*Id.* ¶ 15.) Company Defendants Liffted Coffee LLC and Resineater 420 LLC are comprised of two members, including its majority owner, Ornstein, and its minority owner, Individual Defendant Doug Harding ("Harding"). (*Id.*  ¶¶ 20, 24.) Ornstein is the CEO of the Company Defendants, and Harding is their Manager, Vice President of Sales. (*Id.* ¶¶ 25-26.)

### B.   The Exclusive Agreement

Until 2021, Tylers Coffee sold its products directly on Amazon. (*Id.* ¶ 30.) Beginning in 2021, however, Tylers Coffee turned to third parties to distribute its products on Amazon. In February 2021, a non-party introduced Schecter to Tylers Coffee intending for them to form a business relationship, as Plaintiff was an experienced product distributor on Amazon. (*Id.* ¶ 28.)

---

[1] For purposes of our Rule 12(b)(2) and (b)(3) analyses below, the Court will consider, as necessary, Plaintiff's "own affidavits and supporting materials" in the light most favorable to Plaintiff. S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010).

In April 2021, Ornstein and Harding, acting on behalf of Tylers Coffee, invited Schecter to Tucson, Arizona to discuss a potential business partnership, where Plaintiff would distribute Tylers Coffee's product on Amazon. (*Id.* ¶ 35.) At that meeting, Plaintiff and two other distributors agreed to sell Tylers Coffee's product on Amazon. (*Id.* ¶¶ 36-38.) In mid-June 2021, one of the three parties to the distribution agreement unilaterally lowered its prices of Tylers Coffee's product on Amazon. (*Id.* ¶ 39.) As a result, Plaintiff contacted Ornstein and Harding to indicate that they were not interested in continuing their business relationship unless Plaintiff was made the sole, exclusive distributor of Tylers Coffee, to which the Individual Defendants agreed. (*Id.* at 40). Plaintiff alleges it accepted and relied upon this agreement, thus establishing the "Exclusive Agreement". (*Id.* at ¶ 41).

### C.       The Partnership & Loan Agreements

Individual Defendants also solicited Plaintiff's investment in two new companies that they were organizing, Liftted Coffee LLC and Resineater420 LLC (the "New Ventures"). (*Id.* ¶¶ 42-43.) Plaintiff conditioned their willingness to invest on Individual Defendants' fulfilment of the Exclusive Agreement. (*Id.* ¶ 44.) For a second time, Individual Defendants agreed to Plaintiff's conditional offer and made Plaintiff the exclusive distributor of Tylers Coffee and the New Ventures' forthcoming products, which Plaintiff alleges gave rise to the "Partnership Agreement". (*Id.* ¶ 44.) Individual Defendants subsequently emailed Plaintiff a proposed agreement for each company. (*Id.* ¶ 45.) Defendants' attorney and Plaintiff's counsel negotiated these proposals on their behalf, but the agreements were never signed nor executed by either party. (*Id.* ¶ 47.)

Nevertheless, Individual Defendants initially requested $100,000 as an investment in the New Ventures, to be paid over a period of time. (*Id.* ¶ 46.) Plaintiff agreed to send the money on the condition that it would function as a loan that would convert to an investment once the

partnership was finalized. (*Id.* ¶¶ 46, 48-49.) Thereafter, Defendants charged the personal credit line of an individual member of Plaintiff for $50,000 on August 20, September 17, and October 4, 2021, respectively, with each such charge to serve as a loan that would convert into an investment upon the execution of the agreements between the parties were finalized. (*Id.* ¶¶ 49-50, 56-57.) These three $50,000 charges, Plaintiff alleges, gave rise to the "Loan Agreement" (collectively with the Exclusive Agreement and the Partnership Agreement, the "Agreements"). (*Id.* ¶¶ 50, 56-58.) None of the Agreements have been attached to the FAC and it is unclear whether they are purported to be oral or written contracts.

     **D.**    **The Order**

Expecting to be the exclusive distributor of Tylers Coffee and the New Ventures products, Plaintiff placed a $250,000 order of Tylers Coffee's product in October 2021. (*Id.* ¶¶ 51-52.) Defendants promised delivery of Plaintiff's order a week prior to Thanksgiving in 2021. (*Id.* ¶ 52.) To pay for its order, Plaintiff wired $150,000 to Tylers Coffee on October 18, 2021 and also relied on a pre-existing purchase credit of $70,000, resulting in a total $220,000 advance payment by Plaintiff. (*Id.* ¶ 54.) Several days before Thanksgiving, Plaintiff requested Defendants provide a status update on the order, to which Defendants informed Plaintiff that there were issues with the order and delivery would not occur until sometime in December. (*Id.* ¶¶ 59-60.) At the time of that communication, Defendants requested that Plaintiff pay the remaining balance on the order. (*Id.* ¶ 60.) As directed, Plaintiff paid the remaining $30,000 balance on December 16, 2021. (*Id.*) In December, Defendants claimed for the second time that there were issues with the order and delayed delivery to January 2022. (*Id.* ¶ 62.)

In January 2022, Defendants ceased communication with Plaintiff. (*Id.* ¶ 63.) Later, Defendants informed Plaintiff that they decided to end the parties' business relationship and

promised to return some of the money to Plaintiff. (*Id.* ¶ 64.) After this communication, Plaintiff's counsel contacted Defendants' attorney to request that Defendants' return the money owed. (*Id.* ¶ 65.) Defendants' attorney claimed that Plaintiff owed his clients' money and requested that Plaintiff present an itemized statement. (*Id.* ¶ 65.) Plaintiff provided that statement and, after repeated follow ups, Defendants' attorney finally claimed that his clients did not provide feedback regarding Plaintiff's request. (*Id.* ¶¶ 66-67.)

To date, Defendants have not returned any of the money Plaintiff loaned or wired to Defendants, nor delivered the order to Plaintiff. (*Id.* ¶¶ 62, 64.) Moreover, the parties' agreements were never formally executed. (*Id.* ¶ 47.)

## I.    <u>Procedural Background</u>

Plaintiff filed this action on June 14, 2022 alleging claims for breach of contracts, unjust enrichment, and fraud. (Compl. ¶¶ 65-84, ECF No. 1.) On June 17, 2022, Plaintiff filed the FAC to reflect that there is complete diversity between Plaintiff and not only each of Defendants, but each individual member of the three LLCs that make up Company Defendants. (FAC ¶ 9.) Defendants moved this Court to dismiss the FAC on several grounds: that this court lacks personal jurisdiction; New York is an improper venue; Individual Defendants are protected by the corporate veil; and that each of Plaintiff's Counts fail to state a claim on which relief could be granted. (Defs.' Mot.) Plaintiff opposed on each point. (Plaintiff's Mem. of Law in Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp."), ECF No. 57.) The Court first addresses whether it has jurisdiction over each Defendant before turning to the issues of venue, and, finally, Plaintiff's claims.

## <u>LEGAL STANDARD</u>

I. **Federal Rule of Civil Procedure 12(b)(2)**

To overcome a motion to dismiss for lack of personal jurisdiction at this juncture, the plaintiff must make a *prima facie* showing that the court has jurisdiction over each defendant. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). In resolving this motion, the court may rely on materials beyond the pleadings, including affidavits attached thereto. *See Id*. The pleadings and supporting affidavits are construed in the light most favorable to plaintiff, with all doubts resolved in the plaintiff's favor. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

In diversity cases, courts perform a two-step analysis: first, they examine the law of the state in which it sits to confirm whether it has personal jurisdiction over each defendant and, second, then consider whether its exercise of jurisdiction comports with due process as guaranteed by the United States Constitution. *Id*.

II. **Federal Rule of Civil Procedure 12(b)(3)**

Plaintiff need only make a *prima facie* showing that venue is proper to survive a Rule 12(b)(3) motion to dismiss. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). "Such a showing entails making legally sufficient allegations, including an averment of facts that, if credited, would suffice to establish that . . . venue is proper." *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, No. 16-CV-2205 (VSB), 2017 WL 4997838, at *4 (S.D.N.Y. 2017) (quoting *BMW of N. Am. LLC v. M/V Courage*, 254 F. Supp. 3d 591, 596–97 (S.D.N.Y. 2017)) (internal quotations omitted). On a Rule 12(b)(3) motion, the court must view all facts, including those outside the pleadings, such as affidavits attached thereto, "in the light most favorable to the non-moving party." *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011).

If a court finds venue to be improper, then it may either dismiss the action, or "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Even when venue is proper in the Southern District of New York, the [c]ourt may transfer an action pursuant to 28 U.S.C § 1404(a)." *Fleur v. Delta Air Lines, Inc.*, No. 15-CV-9513, 2016 WL 551622, at *1 (S.D.N.Y. Feb. 2, 2016) (quoting *Solar v. Annetts*, 707 F. Supp.2d 437, 441 (S.D.N.Y. 2010)). Specifically, Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a).

## III.   Federal Rule of Civil Procedure 12(b)(6)

When a party moves to dismiss pursuant to Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" to credit "mere conclusory statements," or to accept "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 679.  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

7

**DISCUSSION**

Defendants raise several arguments in favor of dismissal, pertinently: (i) the Court lacks personal jurisdiction over Defendants; (ii) the Southern District of New York is an improper venue for Plaintiff's claim to be brought; and (iii) Plaintiff failed to state a claim upon which relief may be granted. (Defs.' Mot.) The Court first addresses whether it has personal jurisdiction over each of the Defendants, "as jurisdiction should be assessed prior to the issue of venue and any consideration of the merits." *Arrowsmith v. United Press Intern.*, 320 F.2d 219, 221 (2d Cir. 1963).

I.    **Personal Jurisdiction**

In attempting to dismiss Plaintiff's FAC, Defendants first contend that this Court lacks personal jurisdiction. (Defs.' Mot., p. 13.) The Court first addresses the issue of personal jurisdiction "because a dismissal for lack of jurisdiction renders all other claims moot." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp.3d 111, 133 (S.D.N.Y. 2021) (citing *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp.2d 382, 386 (S.D.N.Y. 2002)) (hereinafter, "*In re Aegean*").

Ascertaining whether a federal court has personal jurisdiction is a two-step process. First, the court determines if each Defendant is subject to general or specific jurisdiction under New York's long-arm statute. Second, the court confirms if its exercise of personal jurisdiction over each Defendant comports with the requirements of due process. *See Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). The Court finds that personal jurisdiction is proper here and consequently DENIES Defendants motion to dismiss the FAC under Rule 12(b)(2).

A.    **Applicable Law**

"Under the New York long-arm statute, a court in New York can exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under [N.Y. Civ.

Prac. L. and Rule ("CPLR")]  § 301, or specific jurisdiction, under CPLR § 302." *Wallert v. Atlan*, 141 F. Supp.3d 258, 271 (S.D.N.Y. 2015). Because no Defendant in this action resides in New York, is incorporated, nor has a headquarters or contacts sufficient to render it "at home" here, (*see* FAC at ¶¶ 13-24), the Court must have specific jurisdiction over each Defendant for each claim. *In re Aegean*, 529 F. Supp.3d at 134-35.

### i.     Specific Jurisdiction: N.Y.C.P.L.R. § 302(a)(1) (Business Activities)

If the court is unable to assert general jurisdiction over the defendant, then it may still exercise specific jurisdiction over a non-domiciliary defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." CPLR § 302(a)(1) ("Section 302(a)(1)"). A defendant "transact[s] business" in the state if it has engaged in "purposeful activity" by "purposefully avail[ing] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246-47 (2d Cir. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 229 N.E.2d 604, 607 (1967)). In addition to the business transaction requirement, the plaintiff must allege an "articulable nexus" between the transaction and the plaintiff's asserted claims. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100,103 (2d Cir. 2006).

### ii.     Due Process

"If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Queen Bee of Beverly Hills*, 616 F.3d at 164. Due process requires that a non-domiciliary have "certain minimum contacts with it such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "The crucial question is whether the defendant has 'purposefully avail[ed] itself of the privilege of

conducting activities within the forum State, thus invoking the benefits and protections of its laws[.]" S*ills v. Ronald Reagan Presidential Found., Inc.*, No. 09 Civ. 1188 (GEL), 2009 WL 1490852, at *10 (S.D.N.Y. 2009). Meeting the threshold set by Section 302(a)(1) will generally be sufficient to comport with due process. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006); *see also Sills*, 2009 WL 1490852 at *10 (citing *Cyberscan Tech., Inc. v. Sema Ltd.*, No. 06 Civ. 526 (GEL), 2006 WL 3690651, at *6 (S.D.N.Y. Dec. 13, 2006)).

   **B.    Application**

      *i.    New York Long-Arm Statute*

Defendants contend that their communications with Plaintiff in the forum regarding their "commercial relationship" alone do not subject them to specific jurisdiction here. (Defs.' Mot., p. 13.) Plaintiff counters that this Court has specific jurisdiction. (Pl.'s Opp., pp. 9-10.) Specifically, Plaintiff argues that Individual Defendants solicitation of "Plaintiff's services" to form an ongoing business relationship with Plaintiff in New York constitutes a business transaction that is the subject of its claims against Defendants. (*Id.* at 9-10.) The Court agrees with Plaintiff.

When analyzing whether the defendant's activity with the forum constitutes a business transaction under the statute, "it is the quality of the defendants' New York contacts that is the primary consideration." *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007). A single, purposeful transaction with the forum can suffice to confer jurisdiction in New York, as long as its purposeful. *See Grand River Enters. Six Nations*, *Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005). Moreover, the defendant's physical presence in New York is not necessary for the court to exercise jurisdiction. *See, Queen Bee of Beverly Hills, LLC*, 616 F.3d at 170 (citing *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (1988)).

Courts have found that the defendant's solicitation of the plaintiff to establish an ongoing business relationship in New York can constitute a business transaction under Section 302(a)(1). *See e.g., Fischbarg*, 880 N.E.2d at 28 (finding the defendants' solicitation of, and frequent communications with, the plaintiff in New York that results in an ongoing attorney-client relationship as the basis for jurisdiction); *Sills*, 2009 WL 1490852 at *8 (conferring jurisdiction over the defendant whose fundraising efforts involved the "sustained and targeted solicitation" of the plaintiff in New York). Other courts have refrained from subjecting the defendant to jurisdiction under the statute where the "center of gravity of the transaction" is outside New York. *Direct TV Latin America, LLC v. Park 610, LLC*, 691 F. Supp.2d 405, 422 (S.D.N.Y. 2010) (internal quotations omitted). On its own volition, the defendant must at least project itself into New York "to engage in a sustained or substantial transaction of business." *Sills*, 2009 WL 1490852 at *8 (quoting *Fischbarg*, 880 N.E.2d at 28).

Defendants' contacts with New York, though arguably minor in isolation, constitute a business transaction in the aggregate under Section 302(a)(1), as they exhibit Defendants' intent to establish an ongoing business relationship with Plaintiff within the state. Beginning in February 2021, the parties opened communications "for the purpose of creating a business relationship," where Plaintiff would be Defendants' partner and exclusive distributor on Amazon. (FAC ¶¶ 28, 44.) Plaintiff also issued the Order to the Defendants with the understanding that Plaintiff would serve as the Defendants' sole distributor. (*Id.* at ¶ 51.) The Order required Defendants to ship products to Plaintiff's location in New York. (*see* CPLR § 301(a)(1).) These contacts exhibit an "arm's-length solicitation" of Plaintiff's distribution services to establish a partnership and effectuate a transaction here. *Direct TV Latin America, LLC*, 691 F.Supp.2d at 422. Moreover, Defendants solicited loans that form the basis of the Loan Agreement from Plaintiff by unilaterally

charging its credit line and accepted wire transfers from Plaintiff for their product. (*Id.* ¶¶ 50, 54, 56-57.) The import of Defendants' frequent communication with Plaintiff was to solicit payments and loans so that Defendants could "actively participate in business in New York." *Carlson v. Cuevas*, 932 F. Supp. 76, 78 (S.D.N.Y. 1996). By intending to supply Plaintiff with its product for the purpose of distribution and by seeking loans from Plaintiff, Defendants purposely availed themselves "of the privilege of conducting activities in New York." *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 209 N.E.2d 68, 72 (1965) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). As such, the business transaction requirement under § 302(a)(1) is met here.

New York's long-arm statute also requires that the plaintiff's claims arise from or substantially relate to the defendant's business transaction with New York. *See Sole Resort, S.A. de C.V.*, 450 F.3d at 103. As stated above, the business transaction with New York is the Defendants' solicitation of Plaintiff to establish an ongoing business relationship in the state and to solicit loans that would turn into investments in the New Ventures, where Defendant, as Plaintiff's partner and exclusive distributor, would deliver the products of Tylers Coffee and the New Ventures to Plaintiff. (FAC ¶¶ 51-52.) Plaintiff alleges breaches of the Exclusive Agreement, Partnership Agreement, and the Loan Agreements, all of which form the substance of the business transaction with New York. (*Id.* ¶¶ 69, 71-72.) A claim for breach of those agreements, then, arises from Defendants' business transaction with New York. Similarly, the nexus of Plaintiff's unjust enrichment claim is that Defendants failed to deliver on the promises underlying the Agreements, thus sharing a substantial relation to the business transaction with New York. (*Id.* ¶ 79.) Last, the substance of Plaintiff's fraud claim is that Individual Defendants made misrepresentations in relation to the Agreements. (*Id.* ¶¶ 85-86.) Thus, the alleged fraud arises from those Agreements which form the basis of the Defendants' business transaction with New York.

Defendants' actions, therefore, are not "'merely coincidental' occurrences that have a tangential relationship to [this] case." *Fischbarg*, 880 N.E.2d at 30 (quoting *Johnson v. Ward*, 829 N.E.2d 1201, 1203 (2005)). Rather, Plaintiff's claims all share an articulable nexus with the business transaction because each claim relates to an injustice committed by Defendants during the course of that transaction. As such, the requisite nexus is present here and consequently, Plaintiff has satisfied the requirements of New York's long-arm statute under Section 302(a)(1).

### ii.    Due Process

The exercise of jurisdiction over Defendants here is also consistent with due process. As noted above, meeting the threshold set by Section 302(a)(1) generally means the requirements of due process have been met, given both bases require the defendant to "purposely avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Sills*, 2009 WL 1490852 at *10 (citing *Cyberscan Tech., Inc.*, 2006 WL 3690651, at *6 (S.D.N.Y. Dec. 13, 2006)). By soliciting Plaintiff's business in New York, forming agreements to deliver its product here for Plaintiff to distribute, and soliciting loans and investments from Plaintiff, it is not unreasonable for Defendants to anticipate being hailed to the state if they failed to fulfill their obligations under such agreements by the other contracting party. Accordingly, the exercise of jurisdiction over the Defendants is fully consistent with due process and the Defendants' motion to dismiss for lack of personal jurisdiction is denied.

## II.    <u>Venue</u>

Defendants move to dismiss Plaintiff's FAC for improper venue or, in the alternative, transfer venue to Arizona. (Defs.' Mot., pp. 11, 13-14.) Plaintiff maintains that venue is proper in this District. (FAC ¶ 9.) Because a substantial part of the events or omissions giving rise to each of Plaintiff's claims occurred here, and Plaintiff's choice of forum is not outweighed by

countervailing convenience factors, Defendants' motion to dismiss under Rule 12(b)(3) is DENIED.

### A.    Applicable Law

Where no defendant resides in the district where the civil action is brought in, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2) ("Section 1391(b)(2)"). Venue may be proper in more than one district as long as a "substantial part" of the material events took place in those districts. *Gulf Ins. Co. v. Glassbrenner*, 417 F.3d 353, 356-57 (2d Cir. 2005). Thus, venue is proper in the district where "*significant* events or omissions *material* to the plaintiff's claim" occurred, "even if other material events occurred elsewhere." *Id.* at 357 (emphasis in original).

A court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought" if venue is improper. 28 U.S.C. § 1406(a). Even when venue is proper, a court may, "[f]or the convenience of the parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

In making this determination, courts consider first if "the action could have been brought in the proposed transferee forum." *Solar*, 707 F. Supp.2d at 442. Next, courts consider "whether the transfer would promote the convenience of the parties and witnesses and would be in the interests of justice." *Id.* (internal quotations omitted). Courts weigh the following factors, among others, to resolve this inquiry: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the available of process to compel

the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010).

### B.    Application

According to Plaintiff, venue is proper under Section 1391 because a substantial part of the events or omissions giving rise to each of its claims occurred in New York. (FAC ¶ 9.) Defendants contend that venue is improper in this Judicial District because all defendants are located, and the operative facts occurred,  in Arizona. (Defs.' Mot., pp. 13-14.) Since this action involves multiple claims, Plaintiff must demonstrate that venue is proper for each claim against each defendant.[2] *See Basile v. Walt Disney Co.*, 717 F. Supp.2d 381, 386 (S.D.N.Y. 2010); *PI, Inc. v. Quality Products, Inc.*, 907 F. Supp 752, 757 (S.D.N.Y. 1995). As such, the Court turns first to Plaintiff's breach of contract claim against the Defendants.

### i.    *Breach of Contract Claim*

In the context of breach of contract claims, courts "consider a number of factors, including where the contract was negotiated or executed, where it was performed, and where the alleged breach occurred" to determine whether a substantial event or omission material to Plaintiff's claim arose here. *Concesionaria DHM, S.A. v. International Finance Corp.*, 307 F. Supp.2d 553, 558 (S.D.N.Y. 2004) (quoting *PI, Inc.*, 907 F. Supp at 757-58). Venue is appropriate "where a substantial part of the events or omissions occurred, . . . even if a greater portion of events occurred elsewhere." *Id.* (citing *Astor Holdings, Inc. v. Roski*, No. 01 Civ. 1905, 2002 WL 72936, at *8 (S.D.N.Y. Jan. 17, 2002)).

---

[2] "Where there are multiple claims, 'the plaintiff must show that venue is proper for each claim asserted, but dismissal of an improperly venued claim is not warranted if is factually related to a properly venued claim and the claims could be considered one cause of action with two grounds of relief.'" *Odom v. Calero*, 2008 WL 449677, at *9 (S.D.N.Y. 2008) (quoting *Solow Building Co., LLC v. ATC Assoc., Inc.*, 175 F. Supp.2d 465, 469 (E.D.N.Y. 2001)).

In this action, Plaintiff's FAC alleges breaches of the Agreements, which were negotiated in New York and Arizona and imposed substantial obligations on both parties to perform in New York. (FAC ¶¶ 36-38, 50-52, 56-57.) Notably, Defendants allegedly agreed to but failed to deliver their products to Plaintiff in New York so Plaintiff could distribute them on Amazon from there. (*Id.* ¶ 50.) Moreover, Plaintiff sent funds from New York to Defendants in furtherance of the Agreements that were allegedly never fulfilled by Defendants. (*Id.* ¶¶ 52, 56-57.) The location of where a breach occurs is murkier. In *Concensionaria DHM*, the Court collected conflicting lines cases, one of which stated that the breach occurred where the decision not to make loan payments was made. *Concensionaria DHM*, 307 F. Supp.2d at 560. The other provided it occurred where the payments were due but never delivered. *Id*. The *Concensionaria DHM* court never resolved the issue of location, focusing instead on the undisputed fact that performance was due in New York. *Id*. Similarly, here, Defendants' performance with respect to the Exclusive Agreement was due in New York. (FAC ¶¶ 51-54.)

Upon these facts, it could be said that both the events and omissions occurring in Arizona and New York respectively were substantial and material to Plaintiff's claim here.[3] This is because the negotiation and performance of the agreement "go to the heart of" a contract claim—the heart of Plaintiff's claim here being that Defendants entered into Agreements after negotiations and failed to perform. *Catsimatidis*, 650 F. Supp. at 752. Thus, even if, *arguendo*, a greater proportion of the substantial and material events occurred in Arizona, New York is still a proper venue with respect to Plaintiff's breach of contract claims under Section 1391(b)(2). *See*, *Concensionaria DHM*, 307 F. Supp.2d at 558.

---

[3] Courts have found the place where contract negotiations took place, *see Mendelson v. Fleischman*, 386 F. Supp. 436, 438 (S.D.N.Y. 1973), and the place where performance was due to be substantial contacts for purposes of establishing venue if material to the plaintiff's contract claim. *See Irrigation Tech. Leasing Assoc., Inc.*, 1991 WL 274479 at *3.

### ii.      Unjust Enrichment Claim

With respect to the unjust enrichment claim, which is premised on Defendants failure and refusal to "recognize the partnership" and "deliver the goods" Plaintiff alleges it is due under the Agreements, the venue inquiry remains the same. (FAC ¶ 79.)  Here, Defendants were enriched in Arizona where they received Plaintiff's wire transfers. (*Id*. ¶¶ 50, 52, 56-57.) The means by which Defendants were enriched, however, involved soliciting Plaintiff's investments in the New Ventures and its business as the Defendants' distributor in New York, "which suffices to meet the substantiality test and establish[es] venue for this claim under § 1391(a)(2)." *Astor Holdings, Inc. v. Roski*, No. 01 CIV. 1905, 2002 WL 72936 at *10 (S.D.N.Y 2002).

### iii.     Fraud Claim

Plaintiff's fraud claim is based on statements made to Plaintiff by Individual Defendants, which Plaintiff alleges Individual Defendants knew to be false and were made to mislead Plaintiff. (FAC ¶¶ 84-89.) Again, venue is proper here if Plaintiff exhibits that a substantial part of the events or omissions giving rise to this claim occurred in New York. *See* 28 U.S.C. § 1391(a)(2). Courts have found that communications transmitted to the district where the suit is filed can satisfy the Section 1391(a)(2) standard if those communications sufficiently relate to the cause of action. *See Sacody Tech., Inc.*, 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994) (finding venue proper in the district where communications were issued, and issued from, when negotiating a confidentiality agreement). Here, there was at least some correspondence by email between the Individual Defendants and Plaintiff. (Defs.' Mot., p. 22.) That correspondence sufficiently relates to Plaintiff's fraud claim because it contains Individual Defendants' allegedly misleading misrepresentations to Plaintiff with respect to their investment agreement. (*Id.*, pp. 13-14.) Thus, venue is proper as to

Plaintiff's fraud claim because Defendants' communications sufficiently related to that claim were made transmitted to New York.

### iv. *Defendants' Motion to Transfer of Venue*

Defendants' motion to transfer is decided in two steps. First, the Court considers if "the action could have been brought in the proposed transferee forum[,]" and next, "whether the transfer would promote the convenience of the parties and witnesses and would be in the interests of justice." *Solar*, 707 F. Supp.2d at 442. Movants must make a "strong case" for transfer by pointing to "clear and convincing evidence upon which the Court can base its decision." *Speedfit LLC v. Woodway USA, Inc.*, 642 F. Supp.3d 429, 437 (S.D.N.Y.) (internal citations and quotations omitted).

Here, Plaintiff could have filed this action in Arizona given that all Defendants reside there and, as discussed above, a "substantial part of the events or omissions giving rise to the claim[s] occurred" there. 28 U.S.C. § 1391(b)(1)-(2).

Courts weigh a multitude of factors when considering the second prong, including: (1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and the relevant ease of access to sources of proof; (4) the convenience of the parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; and (7) the relative means of the parties. *Id*. (citing *N.Y. Marine and General Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 112 (2d Cir. 2010)). "[T]here is no rigid formula for balancing these factors and no single one of them is determinative." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp.2d 474, 477 (S.D.N.Y 2006). Absent a forum selection clause, the plaintiff's choice of forum must be given "some weight". *See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013).

Defendants argue a transfer of venue is proper because the "substantiality" of the events occurring within this District is "lacking". (Defs.' Mem. at 11.) The Court has already found otherwise. Defendants also lecture the Court that it is "error to treat substantiality for the purposes of venue like minimum contacts for personal jurisdiction . . . ." *Id*. The Court has not.

In sum, the Defendants fail to point to clear and convincing evidence to make out the strong case that this matter should be transferred. *Speedfit, LLC*, 642 F. Supp.3d at 437. The Court therefore DENIES Defendants' motion to transfer.

**III.     <u>Preliminary Statement on Piercing the Corporate Veil</u>**

Defendant seeks to dismiss Count III on the basis that the Individual Defendants are protected by the corporate veil. (Defs.' Mem., pp. 12-13.) In response, Plaintiff argues that it only seeks to assert a fraud claim in Count III against the Individual Defendants for a breach of the "partnership agreement". (*See* Pl.'s Opp,. pp. 5 (citing FAC ¶¶ 42-46, 84-89), 16-17.) Plaintiff subsequently dismisses all discussion of veil piercing as a red herring and does not engage with the Defendants' arguments.  (*Id*. at 16.)

Nevertheless, the Court notes that Counts I and II are directed at "Defendants", while Count III is directed at the Individual Defendants, specifically. (FAC ¶¶ 70-89.) Plaintiff defines "Defendants" in the FAC to include the Individual Defendants. (*Id*. ¶ 1.) Moreover, Plaintiff alleges in Count III that the Individual Defendants made "Knowingly False Statements and Intentional Misrepresentations for the sole purposes [sic] of deceiving Plaintiff into . . . relying on the terms and provisions of the . . . Agreements, including that Plaintiff would become a partner with the Defendants . . .", indicating that the Partnership Agreement is but one of the bases of fraud to which this count relates. (*Id*. at ¶ 86.) In other words, Count III alleges the Individual Defendants are responsible for fraud with respect to all of the Agreements. Whether the result of imprecise

19

drafting or some other reason, each count is written so as to allege illegality on the part of the Individual Defendants.

Even so, the Court takes Plaintiff at its word and will limit any veil piercing analysis to Count III.

## V.    <u>Defendants' Motion to Dismiss for Failure to State a Claim</u>

The Court construes Defendants' moving papers to the effect that they seek to dismiss all of Plaintiff's claims under Rule 12(b)(6) for failure to state a claim. (Defs.' Mot., p. 11-12.) The Court will proceed to each count in the FAC in order.

### A.    **Count I – Breach of Contract**

Plaintiff asserts that it has performed all of its obligations under the Agreements and that Defendants breached those Agreements by "failing to deliver . . . the promised goods [and] the exclusivity and the partnership benefit rights . . . ." (FAC ¶¶ 75-76.) As noted above, the "Agreements" consist of the Exclusive, Partnership, and Loan Agreements. (*See also*, *Id.* at ¶ 69.)

Defendants argue that there was in fact no enforceable contract that it was bound to perform to. (*Id.* at 14.) Alternatively, Defendants argue that if there was a valid agreement, they were not obligated to perform because it was barred by Statute of Frauds. (*Id.* at 14-15.) For the following reasons, the Court dismisses Count I of the FAC.

#### i.    **Applicable Law**

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). To survive a motion to dismiss, a plaintiff must allege more than a bare assertion that an agreement was breached. *Berman v. Sugo LLC*, 580 F. Supp.2d 191, 202 (S.D.N.Y. 2008). In assessing the plaintiff's pleading as to the

foregoing elements, the courts are more obliged to dismiss breach of contract claims that are "too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated." *Negrete v. Citibank, N.A.*, 187 F. Supp.3d 454, 468 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) (cleaned up); *see also Posner v. Minnesota Mining & Mfg. Co.*, 713 F. Supp. 562, 563–64 (E.D.N.Y. 1989).

If either party does "not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs[,]" even where the parties orally agree to the terms of a proposed contract. *Elysium Health, Inc. v. ChromaDex, Inc.*, 22-1059-cv, 2023 WL 7037442, at *2 (2d Cir. Oct. 26, 2023) (quoting *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984).) However, if neither party reserves the right to bound by an agreement until it is in writing and signed, and "all the substantial terms of a contract have been agreed on, and there is nothing left for future settlement, then an informal agreement can be binding." *Municipal Consultants & Publishers, Inc. v. Town of Ramapo*, 47 390 N.E.2d 1143, 1145 (1979). Courts assess several factors when analyzing the parties' reservations. *See R.G. Grp., Inc.*, 751 F.2d at 75 (2d Cir.1984).

When considering whether parties intended to be bound by a less-than-fully executed agreement or oral agreement that they intend to commit to writing, courts look to: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Even so, the most important factor is the parties' intent. *Id.*; *see also Vacold LLC v.*

*Cerami*, 545 F.3d 114, 125 (2d Cir. 2008) (stating that while the foregoing categories of facts are useful, "[t]he ultimate issue, as always, is the intent of the parties . . . .").

ii.     **Application**[4]

The Court addresses each alleged breach separately to determine if there was a valid and enforceable agreement, adequately performed by Plaintiff, breached by Defendants, and causing damages to Plaintiff. For the following reasons, Count I of the FAC is dismissed without prejudice in its entirety.

a.     *The Exclusive Agreement*

The pleadings must specify the terms of the agreement that serve as the basis for the plaintiff's claim, *Negrete*, F. Supp.3d at 468, and the "defendant's acts or omissions constituting the breach[.]" *Marshall v. Hyundai Motor America*, 51 F. Supp.3d 451, 468 (S.D.N.Y. 2014). Moreover, the plaintiff must allege facts "relating to the formation of the contract, the date it took place, the contract's major terms, the parties to the contract, or [the parties'] assent to its terms." *Berman v. Sugo*, 580 F. Supp.2d 191, 202 (S.D.N.Y. 2008).

Here, Plaintiff fails to allege any of the major terms of the Exclusive Agreement beyond the Defendants' obligation to make Plaintiff their exclusive distributor of Tylers Coffee products on Amazon. (FAC ¶ 40.) The pleadings omit essential terms like the duration of performance, the price to be paid, or how performance would be carried out after the parties reached the alleged Exclusive Agreement. Moreover, Plaintiff states that it had to request the exclusive distribution right again when the parties were discussing the Partnership Agreement. (*Id*. at 44.) Thus, the pleadings do not allege the formation of a valid agreement under *Twombly* in this context. *See e.g.*,

---

[4] Since neither party alleges what law governs their agreements, the Court determines the choice of law for Plaintiff's contract claim under a "center of gravity" analysis. *GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 383 (2d Cir. 2006). The location of the substance of the contracts—where the parties comprehended the contracts to be performed—is in New York. *See id.* Thus, the Court applies New York law.

*Marshall*, 51 F. Supp.3d at 468; *Fink v. Time Warner Cable*, 810 F. Supp.2d 633, 644-645 (S.D.N.Y. 2011). Plaintiff also fails to make a showing of the "ultimate issue" that the Defendants intended to enter into the Exclusive Agreement. *Vacold LLC*, 545 F.3d at 125. Finally, even assuming at least one of the Defendants entered into the Exclusive Agreement, Plaintiff fails to affirmatively allege anywhere in the FAC that other entities continued to distribute Tylers Coffee products— which, although Plaintiff provides essentially no insight into the Exclusive Agreement's terms, the Court presumes is the basis for Plaintiff's claim of a breach. *Marshall*, 51 F. Supp.3d at 468.

Accordingly, Count I of the FAC is dismissed without prejudice with respect to the Exclusive Agreement.

### b.    *The Partnership Agreement*

Plaintiff alleges that it entered into the Partnership Agreement with the Individual Defendants by which Plaintiff would invest in the New Ventures on the condition that Plaintiff be provided exclusive distribution rights as to Tylers Coffee and the New Ventures products. (FAC at ¶¶ 43-44.) Plaintiff notes that the Individual Defendants emailed two separate proposed agreements relating to the each of the New Ventures, which were then negotiated with "Defendants'" attorney, though "ultimately never signed." (*Id*. at ¶¶ 45-47.)

By Plaintiff's own admission, not all of the terms were agreed upon and an investment agreement into a joint venture is one usually reduced into writing. *Winston,* 777 F.2d at 80. Indeed, Plaintiff makes no allegations as to what terms would be contained in the Partnership Agreement at all. There is no indication whether Defendants reserved the right not to be bound until the agreements were executed or any indication that Defendants ever performed their side of the bargain—or, indeed, what performance was due from them. *Id*. Moreover, the allegations regarding the Loan Agreement—notably, that the loans would convert into investments subject to the

Partnership Agreement once the latter was executed—most fatally undermines there was a meeting of minds sufficient to create a binding contract. (*See* FAC at ¶¶ 47-49, 56-57.) Plaintiff never alleges this condition precedent in the Loan Agreement is ever met, and, indeed, Plaintiff provides that the "written agreements were never signed". (FAC ¶ 47) As alleged, then, the Partnership Agreement is not a binding contract.

Accordingly, Count I of the FAC is dismissed without prejudice with respect to the Partnership Agreement.

### c.      *The Loan Agreement*

Plaintiff alleges that the Defendants charged a total of $150,000 to a personal credit card owned by one of the owners and members of Plaintiff in $50,000 batches over three months. (*Id*. at ¶¶ 50, 55-56.) Plaintiff contends that the charges would functions as loans until the Partnership Agreement was executed, at which point the loans would convert into investments in the New Ventures. (*Id*. at ¶ 49.) Plaintiff does not otherwise provide terms for the Loan Agreements, such as an interest rate, payment schedule, collateral, if any, term, and the effects of default.

Plaintiff's threadbare pleadings fail it again. In this instance, it is not evident there is any breach. Plaintiff only provides that, upon the execution of the "partnership documents", the amounts tendered under the Loan Agreement will be converted into investments in the New Ventures. (*Id*. ¶¶ 50-51, 56-57.)  The Court has already found that Plaintiff failed to sufficiently plead that the Partnership Agreement was a binding contract, but further notes Plaintiff stated that the written documents intended to underlie the Partnership Agreement were never executed (*Id*. ¶¶ 45-47). Therefore, assuming, *arguendo*, the Loan Agreement is binding, there is no indication that the Defendants breached that agreement. Presumably, the tendered amounts remain loans and not interests in the New Ventures.

Accordingly, Count I of the FAC is dismissed without prejudice with respect to the Loan Agreement.

## VI.     Unjust Enrichment - Count II

In Count II, Plaintiff alleges that the Defendants "fail[ure] and continu[ed] refusal to deliver the goods to Plaintiff and refus[al] to recognize the partnership [between the parties]" has resulted in Defendants being unjustly enriched as to at least $400,000. (*Id*. at ¶ 79.) As such, the Court construes this claim to be targeted at the $150,000 tendered to Defendants pursuant to the purported Loan Agreement and the $250,000 tendered to the Defendants pursuant to the Order. (FAC ¶¶ 50-51, 56-57.)

### A.     Applicable Law

Under New York law, an unjust enrichment claim requires "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d. Cir. 2000). The existence of valid contract typically bars recovery under a quasi-contract theory of unjust enrichment. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 458-459 (S.D.N.Y. 2016).[5]

Courts are less likely to dismiss unjust enrichment claims plead alongside contract claims, however, if it is not "clear from the face of the complaint that there exists an express contract that clearly controls." *Knudsen v. Quebecor Printing (U.S.A.), Inc.*, 792 F. Supp. 234, 237 (S.D.N.Y. 1992).

---

[5] Courts in this District have, however, entertained unjust enrichment claims plead in the alternative to a breach of contract claim where parties have challenged the underlying contract's validity. *See Agerbrink*, 155 F. Supp. at 459 (collecting cases); *see also*, *Net2Globe Intern., Inc. V. Time Warner Telecom of New York*, 273 F. Supp.2d 436, 466 (S.D.N.Y. 2003)

### B.      Application

Plaintiff asserts in its Opposition that its unjust enrichment claims are separate and distinct from its breach of contract claims. (Pl.'s Opp., pp. 18-19.) With respect to the Loan Agreement, not so.

As discussed above, the Loan Agreement is one of the "Agreements" to which the Plaintiff asserts a breach of contract. (*See* FAC ¶ 69-77.) As pled, the Plaintiff fails to make a showing of any breach of the Loan Agreement, see above. That is, there exists a contract covering the same subject matter, which bars an unjust enrichment claim. *Agerbrink*, 155 F. Supp.3d at 458-59. Accordingly, Plaintiff's unjust enrichment claim with respect to the Loan Agreement is dismissed without prejudice.

Plaintiff's claim with respect to the Order similarly fails. Plaintiff describes the Order[6] as being in the amount of $250,000, broken down with particularity between a preexisting purchase credit and additional tender, and a date by which Defendants were to deliver the goods. (FAC at ¶¶ 51-54.) In essence, then, Plaintiff is bypassing a breach of contract claim with respect to the order for an unjust enrichment claim. Again, the existence of a contract between the parties bars recovery under an unjust enrichment theory. *Agerbrink*, 155 F. Supp.3d at 458-59.

Consequently, Plaintiff's unjust enrichment claim in Count II is dismissed in its entirety without prejudice.

### VII.    Fraud - Count III

Finally, Plaintiff asserts a fraud claim against the Individual Defendants. (FAC ¶ 84-89.) Plaintiff alleges the Individual Defendants "made dozens" of knowingly false, material

---

[6] It is unclear from the pleadings whether the Order was reduced to writing, as required by N.Y. U.C.C. § 2-201(1) given the Order is a contract for the sale of goods in excess of $500. (*see* FAC ¶ 51.) Given the parties are sophisticated merchants, however, the Court construes the pleadings such that the Order is compliant with the statute of frauds.

representations to the Plaintiff regarding "the terms, provisions, and other pertinent details of [the] partnership, as well as that the goods would be delivered timely." (*Id*. ¶ 85.) Plaintiff subsequently expands the scope of Defendants' alleged material misrepresentations to include the "terms and provisions of [all the] Agreements . . . ."[7] (*Id*. ¶ 86.)

## A. Applicable Law

To establish a prima facie case for fraud under New York law, the party alleging fraud must show that: "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996).

While "as a general matter under New York law, a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract . . . not every fraud claim is foreclosed in an action also involving a contract." *Wall*, 471 F.3d at 416. A plaintiff may plead a fraud claim alongside a breach of contract claim if it demonstrates: "(1) a legal duty separate from the duty to perform under the contract; or (2) fraudulent misrepresentation collateral or extraneous to the contract; or (3) that special damages are caused by the misrepresentation and [are] unrecoverable as contract damages." *Bridgestone/Firestone, Inc.,* 98 F.3d at 20 (2d Cir. 1996) (cleaned up). Still, a fraud claim that "arises out of the same facts as the contract claim" is precluded as duplicative of the contract claim. *Ellington Credit Fund, Ltd. v. Select Portfolio*

---

[7] The Court notes that a veil-piercing analysis would be required to determine any personal liability on the Individual Defendants' part with respect to the Exclusive Agreement. However, the Court declines to pursue such an analysis given the myriad other grounds by which the Court disposes of Plaintiff's Count III.

*Servicing, Inc.*, 837 F. Supp. 2d 162, 198 (S.D.N.Y. 2011) (quoting *Telecom Int'l Am., Ltd. v. AT&T Corp.,* 280 F.3d 175, 196 (2d Cir. 2001).

A claim for fraud under New York common law requires that the pleadings satisfy the Federal Rules of Civil Procedure 9(b) standard. *See Matana v. Merkin*, 957 F. Supp. 473, 484 (S.D.N.Y. 2013). Rule 9(b) states that "a party must state with *particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). This heightened pleading requirement obligates the complainant to "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Duran v. Henkel of America, Inc.*, 450 F. Supp.3d 337, 352-53 (S.D.N.Y. 2020) (quoting *Eternity Glob. Master Fund, Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).

### B. Application

Plaintiff's claims in Count III are insufficient. First, Plaintiff does not plead fraud here with the necessary particularity to survive a motion to dismiss under the heightened pleading requirement of Federal Rules of Civil Procedure 9(b). *See Eternity Global Master Fund Ltd.,* 375 F.3d at 187. Plaintiff does not "detail the statements (or omissions) that [it] contends are fraudulent[.]" *Harsco*, 91 F.3d at 347. Rather, Plaintiff makes conclusory references to statements that it alleges Individual Defendants made with the intent to defraud and knew to be false. (FAC ¶ 85.) Plaintiff does raise one instance where it allegedly relied on Defendants' promise that Plaintiff would serve as the exclusive distributor of Tylers Coffee and the New Ventures' products. (*Id*. ¶ 51.) However, Plaintiff fails to ever affirmatively assert that any other entity or person served as a distributor following the parties entering into the purported Exclusive Agreement.

Second, Plaintiff's fraud claim is merely duplicative of its breach of contract claims. Individual Defendants alleged fraudulent misrepresentations are "merely allegations that [they] breached contractual obligations they owed" to Plaintiff. *B&M Linen, Corp v. Kannegiesser, USA, Corp.*, 679 F. Supp.2d 474, 480 (S.D.N.Y. 2010). Plaintiff alleges Individual Defendants made fraudulent statements relating to the Agreements—the very agreements that serve as the basis of Plaintiff's breach of contract claim. (FAC ¶¶ 84-85.) Moreover, Plaintiff supports its fraud claim with the premise that Individual Defendants made misrepresentations during the course of the parties alleged contractual relationship. (*Id.*) When Plaintiff's fraud claim is based on the same facts as its breach of contract claim, the claims are duplicative. *See AFP Manufacturing Corp. v. AFP Imaging Corp.*, No. 17-cv-3292, 2018 WL 3329859, at *10 (S.D.N.Y. July 6, 2018); *RGH Liquidating Tr. v. Deloitte & Touche LLP*, 851 N.Y.S.2d 31, 32-33 (2008) (dismissing the plaintiff's fraud claim as duplicative of its breach of contract claim where the fraud claim was based on allegedly fraudulent misrepresentations related to the defendants' contractual obligations).

For the foregoing reasons, Plaintiff's Count III is dismissed without prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's First Amended Complaint is DENIED, in part, and GRANTED, in part. Plaintiff's First Amended Complaint is dismissed in its entirety without prejudice. The Clerk of the Court is respectfully directed to terminate this motion at ECF No. 48. Plaintiff is granted leave to file a second amended complaint, with such complaint to be filed no later than February 12, 2024. Failure to timely file a second amended complaint pursuant to this Opinion & Order will result in those claims dismissed without prejudice herein to be dismissed with prejudice. Further, Defendants are directed to file a

responsive pleading or inform the Court of their intention to file an appropriate motion by March

4, 2024.

Dated:    January 10, 2024                     SO ORDERED:
            White Plains, New York

_____

NELSON S. ROMÁN
United States District Judge